ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| GABRIEL ANTONIO SIFRE ORTEGA<br><br>Peticionario<br><br><br>V.<br><br>PUERTO RICO LEGAL MARIJUANA INC., PRLM EDUCATIONAL, INC. Y OTROS<br><br>Recurridos | TA2026CE00447 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV02091<br><br>Sobre:<br><br>Injunction (Entredicho Provisional, Injunction Preliminar y Permanente |

Panel integrado por su presidenta, la Juez Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 11 de mayo de 2026.

Comparece Gabriel Antonio Sifre Ortega (en adelante, peticionario o señor Sifre Ortega) mediante recurso de *certiorari* presentado el 12 de abril de 2026, que debió ser Apelación pues nos solicita que dejemos sin efecto la *Sentencia Parcial* y *Orden* emitida por el Tribunal de Primera Instancia, Sala de San Juan (TPI o foro primario) del 4 de febrero de 2026. Mediante el referido dictamen, el foro primario declaró "No Ha Lugar" la *Moción en solicitud de sentencia sumaria para la concesión de daños estatutarios* presentada por el peticionario y declaró "Ha Lugar" la *Moción de desestimación* presentada por Goodwin Aldarondo Jiménez (en adelante, señor Aldarondo Jiménez), Puerto Rico Legal Marijuana Inc. (en adelante PRML) y PRLM

Educational, Inc. (en adelante PRLME) (en conjunto, los recurridos).

Por los fundamentos que expondremos a continuación, se se modifica en parte y se confirma lo no modificado de la *Sentencia Parcial* y *Orden* recurrida.

**I.**

La controversia ante nuestra consideración tuvo su origen el 1 de marzo de 2024 cuando el señor Sifre Ortega presentó una *Demanda* en contra de PRML y PRLME, al amparo del Artículo 4 de la Ley Núm. 139-2011, según enmendada, 32 LPRA sec. 3153, mejor conocida como *Ley del Derecho sobre la Propia Imagen* (en adelante, Ley Núm. 139-2011).[1] En esencia, el peticionario sostuvo que las codemandadas PRML y PRMLE usaron su imagen luego de culminada la relación laboral entre las partes, en violación a las disposiciones de la Ley Núm. 139-2011. Además, indicó que el uso de su imagen tuvo un fin comercial y fue utilizada sin su consentimiento, aun cuando este solicitó la remoción inmediata de su imagen de los videos educativos que utilizaban para impartir los cursos que lo mostraban como profesor conferenciante. Por tanto, solicitó un interdicto, daños reales y estatutarios, así como enriquecimiento injusto.

Luego de varios trámites procesales, se celebró una vista de interdicto y las partes presentaron mociones de sentencia sumaria. No obstante, el 13 de mayo de 2024, el TPI dictó *Sentencia parcial* en la que declaró "Ha Lugar" la *Solicitud de Sentencia Sumaria* presentada por el peticionario y dictó el interdicto estatutario al amparo de la Ley Núm. 139-2011.[2] En

---

[1] Entrada #1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI); Entrada #9 de SUMAC TPI.
[2] Entrada #41 de SUMAC TPI.

vista de ello, prohibió a PRML y PRMLE de usar los videos de los cursos y cualquier otro material que contenga la imagen del señor Sifre Ortega sin mediar consentimiento o acuerdo por escrito.

Inconforme con dicha determinación, PRML y PRMLE comparecieron ante el Tribunal de Apelaciones, caso número KLAN202400569.[3] El 22 de noviembre de 2024, un panel hermano dictó *Sentencia* en la cual confirmó el dictamen emitido por el foro primario en todos sus extremos. El 5 de diciembre de 2024, el peticionario presentó *Segunda Demanda Enmendada* para añadir como partes al señor Aldarondo Jiménez, CEO de las entidades PRML y PRMLE, así como a su esposa y la Sociedad de Bienes Gananciales.[4]

Posteriormente, el 27 de enero de 2025, el peticionario desistió sin perjuicio de las reclamaciones de daños reales y enriquecimiento injusto, por lo que el TPI dictó *Sentencia Parcial* el 29 de enero de 2025.[5] El 10 de febrero de 2025, el peticionario presentó *Moción de Sentencia Sumaria* para la concesión de daños estatutarios.[6] El 13 de febrero de 2025, los recurridos removieron el caso al Tribunal Federal, razón por la cual el TPI dictó *Sentencia* de paralización decretando el archivo del caso el 14 de febrero de 2025.[7]

Luego de varios trámites ante el Tribunal Federal, el 5 de septiembre de 2025, mediante un *Memorandum and Order* el Tribunal Federal devolvió el caso al tribunal estatal, toda vez que el reclamo del señor Sifre Ortega era uno exclusivamente al amparo de una ley estatal.[8] El 8 de septiembre de 2025, el TPI

---

[3] Entrada #49 de SUMAC TPI.
[4] Entrada #50 de SUMAC TPI.
[5] Entrada #62 de SUMAC TPI; Entrada #68 de SUMAC TPI.
[6] Entrada #76 de SUMAC TPI.
[7] Entrada #80 de SUMAC TPI; Entrada #81 de SUMAC TPI.
[8] Entrada #82 de SUMAC TPI.

dictó *Resolución Interlocutoria y Señalamiento* en la que ordenó la continuación de los procedimientos, concedió un término a los recurridos para que presentaran su oposición a la solicitud de sentencia sumaria para la concesión de daños estatutarios y señaló una vista argumentativa para el 15 de octubre de 2025.[9]

El 16 de septiembre de 2025, los recurridos presentaron *Contestación a Segunda Demanda Enmendada*.[10] El 22 de septiembre de 2025, PRLM, el señor Aldarondo Jiménez y Cinthia Ramos presentaron una *Moción de Desestimación*.[11]

Posteriormente, el 1 de octubre de 2026, los recurridos presentaron su *Oposición a la Solicitud de Sentencia Sumaria* para la concesión de daños estatutarios.[12] En respuesta a ello, el peticionario presentó *Réplica a Oposición a Sentencia Sumaria* en la que argumentó los múltiples incumplimientos de los recurridos con las Reglas de Procedimiento Civil y reiteró la mala fe de estos en querer ignorar el dictamen del TPI, en torno a cuáles era las controversias pendientes. [13]

El 15 de octubre de 2025 se celebró la vista argumentativa ante el TPI.[14] El 4 de febrero de 2026, el foro primario notificó *Sentencia Parcial y Orden* en la que declaró "Ha Lugar" la desestimación a favor del señor Aldarondo Jiménez. Allí, explicó que, el Art. 4.03 de la Ley General de Corporaciones, *infra,* establece en cuanto a la obligación de directores y oficiales en el desempeño de sus funciones, que solo la negligencia crasa conllevará a la responsabilidad. El TPI razonó que el señor Aldarondo Jiménez se comprometió a eliminar la imagen del señor

---

[9] Entrada #83 de SUMAC TPI.
[10] Entrada #85 de SUMAC TPI.
[11] Entrada #86 de SUMAC TPI.
[12] Entrada #94 de SUMAC TPI.
[13] Entrada #97 de SUMAC TPI.
[14] Entrada #99 de SUMAC TPI.

Sifre Ortega en dos ocasiones: el 17 de mayo de 2023 y el 9 de enero de 2024. Que, aunque la imagen de Sifre Ortega se utilizaba, se habían hecho modificaciones a los talleres, incluyendo la participación de otros recursos. Por tanto, sostuvo que el reclamo fue atendido y con eso, se determina que no se ha presentado prueba suficiente que demuestre la existencia de negligencia crasa ni la intención de violar un derecho.

Además, el foro primario declaró "No Ha Lugar" la *Solicitud de Sentencia Sumaria* presentada por el peticionario para la concesión de daños estatutarios, y determinó que subsistían las siguientes controversias: 1) la frecuencia del uso de la imagen de Sifre Ortega por parte de la demandada; 2) el contenido y tiempo de participación de Sifre Ortega en las grabaciones; y 3) la cuantía de los daños estatutarios bajo la Ley Núm. 139-2011.[15]

No obstante, luego de examinadas las alegaciones de las partes y la prueba que obra en el expediente, el TPI determinó que los siguientes hechos no se encuentran en controversia:

> 1. El demandante, Sr. Gabriel A. Sifre Ortega, es mayor de edad, soltero, abogado de profesión y vecino de San Juan, Puerto Rico.
>
> 2. La codemandada, Puerto Rico Legal Marijuana Inc., ("PRLM"), es una corporación doméstica organizada bajo las leyes de Puerto Rico, con oficina designada en San Juan, Puerto Rico.
>
> 3. La codemandada, PRLM Educational, Inc. ("PRLME"), es una corporación sin fines de lucro organizada bajo las leyes de Puerto Rico, con oficina designada en San Juan, Puerto Rico.
>
> 4. El Demandante prestó servicios profesionales a los Demandados desde el 2018 hasta el 9 de septiembre de 2020, cuando pasó a formar parte de la plantilla regular de empleados.
>
> 5. Como parte de sus funciones, el Demandante impartía los cursos de: 1) Introducción a la Industria de Cannabis Medicinal, Licencia Ocupacional y 2) Adiestramiento para Personal de Seguridad.

---

[15] Entrada #107 de SUMAC TPI.

6. Siendo empleado de la empresa, el Demandante accedió a grabar ambos cursos en el 2022 para utilizarse como herramientas de trabajo, contestando preguntas y dudas a medida que se presentaba en la grabación, en tiempo real.

7. En los cursos grabados se podía apreciar la imagen y voz de Sr. Sifre Ortega como conferenciante de los videos.

8. El curso de Introducción a la Industria de Cannabis Medicinal se brindaba en frecuencia de dos (2) veces al mes y el curso de Adiestramiento para Personal de Seguridad una (1) vez al mes, con seis (6) horas de duración cada uno.

9. El curso de Introducción a la Industria de Cannabis Medicinal que se ofrecía virtualmente tenía un costo de $97.00 por persona, mientras que el curso de Adiestramiento para Personal de Seguridad tenía un costo de $75.00 por persona.

10. Los cursos de Introducción a la Industria de Cannabis Medicinal y de Adiestramiento para el Personal de Seguridad eran promocionados por PRLME a través de la plataforma Eventbrite.

11. Los cursos dados y promocionados por las codemandadas PRLM y PRLME a través de la plataforma Eventbrite se hacían con fines de lucro y constituían fuente de ingresos para las entidades codemandadas.

12. El último curso impartido por el Demandante fue el 18 de abril de 2023.

13. El último día de trabajo del Demandante para los Demandados fue el 30 de abril de 2023.

14. El 9 de mayo de 2023, el Demandante le solicitó a los Demandados la remoción de su imagen de los vídeo utilizados para impartir los cursos.

15. Los Demandados confirmaron el recibo de la comunicación sin acción posterior.

16. A más de ocho (8) meses de haber concluido la relación laboral y del Sr. Sifre Ortega haber exigido de manera expresa la remoción de su imagen de los cursos en cuestión, el 12 de diciembre de 2023, advino en conocimiento de que las codemandadas continuaban haciendo uso de su imagen en los referidos cursos.

17. El 15 de diciembre de 2023, el Demandante comunicó nuevamente su solicitud para detener el uso de los videos en controversia.

18. El 9 de enero de 2024, los Demandados respondieron informando que no será hasta febrero de 2024 que tuvieran los nuevos cursos sin la imagen de la parte demandante.

19. No existe acuerdo por escrito en donde el Demandante haya concedido los derechos u otorgado una licencia a la parte demandante para el al uso de su imagen, incluyendo su imagen, su voz, atributo o cualquier representación que le identifique ante un observador o escucha promedio.

20. No existe contrato de trabajo que contenga la descripción o alcance de tareas numeradas del puesto que ocupó el Demandante.

21. El uso de la imagen del Sr. Sifre Ortega nunca fue objeto de negociación entre las partes, ni antes, ni durante ni luego de la relación laboral.

22. Aldarondo Jiménez y Ramos suscribieron capitulaciones matrimoniales el 3 de noviembre de 2020. De la *Certificación* del Registro de Capitulaciones Matrimoniales surge que las capitulaciones se otorgaron entre ambos. La *Certificación* también indica que no aparece otra inscripción de capitulaciones relacionada con Aldarondo Jiménez y Ramos.

23. Durante su relación laboral, Sifre Ortega fue compensado económicamente por grabar su parte del curso y facilitar la educación con esas grabaciones.

24. PRLME invirtió en recursos económicos para preparar los cursos, los materiales, el currículo y los temas; y costeó lo relacionado con grabaciones, como el estudio de grabación, la edición y el arte de los videos.

25. El 17 de mayo de 2023, Aldarondo Jiménez contestó la comunicación de Sifre Ortega en donde este había solicitado la remoción de su imagen de los cursos que impartía la compañía y le expuso que estaba en el proceso de remover su imagen a la mayor brevedad posible:

> En cuanto su solicitud de remover su imagen entiendo se refiere a los cursos grabados para la compañía de licencia ocupacional y el curso al personal de seguridad. Sin embargo, le recuerdo que las partes de los cursos que usted grabó son lo que se conoce como "work product". La compañía le pagó por el tiempo en que usted grabó los cursos, estuvo dentro de sus horas de trabajo y usted incluyó estas horas en su desglose de facturación mensual. Por otro lado, le recuerdo que, no existe nada de su autoría en los cursos ya que el curso fue creado por PRLM y aprobado para PRLM por la Oficina de Cannabis Medicinal. Tanto los temas del curso como la presentación del curso fueron creados por la compañía y le fueron provistas para que usted grabara el curso. Sin embargo, le informamos que estamos en el proceso de grabación de todos nuestros cursos donde usted grabó para removerlo de los mismos a la mayor brevedad posible.

26. Alexandra M. Rodríguez Espinoza (Rodríguez Espinoza) continuó el trabajo de Sifre Ortega una vez culminó su relación laboral.

27. Rodríguez Espinoza utilizó las grabaciones de Sifre Ortega para el curso de Licencia Ocupacional desde que Sifre Ortega cesó su empleo.

28. Rodríguez Espinoza editó grabaciones posteriores a la renuncia de Sifre Ortega.

29. El 12 de diciembre de 2023 fue última vez que se utilizaron las grabaciones de Sifre Ortega fue para el curso de Licencia Ocupacional.

30. El 9 de enero de 2024, nuevamente, Aldarondo notificó que se encontraban en las gestiones para que las grabaciones sin la imagen se Sifre estuviesen listas a finales de febrero de 2024: "Informamos que estamos haciendo todo lo posible para poder tener, a finales del mes de febrero del presente año, las nuevas grabaciones de nuestros cursos sin la imagen del Sr. Sifre".[16]

Ante ello, el 17 de febrero de 2026, el peticionario presentó *Moción en Solicitud de Reconsideración y Solicitud de Eliminación y Enmiendas a Determinaciones de Hechos*, en la que sostuvo que no procedía la desestimación a favor del señor Aldarondo Jiménez, esto al amparo del Artículo 10 de la Ley Núm. 139-2011.[17] Además, sostuvo que tampoco procedía considerar la inversión ni los gastos incurridos por los recurridos para determinar la cuantía de los daños estatutarios, y que, como consecuencia de ello, procedía enmendar y/o eliminar algunas de las determinaciones de hechos añadidas en la *Sentencia Parcial y Orden* por no ajustarse a la prueba y/o por tratarse de hechos inmateriales e impertinentes a la controversia pendiente para dilucidar la cuantía de los daños. El 3 de marzo de 2026, los recurridos presentaron su Oposición a tal moción.

Evaluados ambos escritos, el TPI dictó *Resolución interlocutoria* en la que modificó, en parte, su dictamen.[18] No obstante, sostuvo la desestimación a favor de Aldarondo Jiménez, la cual se basó en la inmunidad del Art. 4 de la Ley de Corporaciones. En específico, el TPI concluyó que bajo el Art. 10 de la Ley Núm. 139-2011, los dueños responden ante una

---

[16] Entrada #107 de SUMAC TPI, págs. 5-7.
[17] Entrada #108 de SUMAC TPI.
[18] Entrada #120 de SUMAC TPI.

violación al derecho de imagen de un tercero solo "cuando hay un uso de imagen con conocimiento [de] las exigencias de la Ley".[19]

En cuanto a la solicitud de enmiendas y eliminación a las determinaciones de hecho, el TPI también modificó, en parte, su dictamen. En específico, declaró "Ha Lugar" la solicitud de enmienda a la determinación de hechos #27, en la cual aclaró que la imagen del señor Sifre Ortega se utilizó en los dos (2) cursos, Licencia Ocupacional y Adiestramiento para Personal de Seguridad. No obstante, declaró "No Ha Lugar" la solicitud de enmiendas y/o eliminación de las determinaciones de hechos #23, #24 y #28. La razón por la que el TPI decidió no eliminar las determinaciones y hechos en controversia es que, aunque el señor Sifre Ortega insiste en que son inmateriales y crean confusión, no es menos cierto que ayudarían a este tribunal en la facultad y discreción que le otorga el Artículo 4 de la Ley Núm. 139-2011.

Inconforme con el proceder del TPI, el 12 de abril de 2026, el peticionario acudió ante este Tribunal mediante recurso de *Certiorari, Evaluado como Apelación* y señala los siguientes errores:

**ERRÓ EL TPI AL DESESTIMAR LA DEMANDA A FAVOR DE GOODWIN ALDARONDO JIMÉNEZ POR SU DESCONOCIMIENTO DE LAS EXIGENCIAS DE LA LEY NÚM. 139-2011**

**ERRÓ EL TPI AL CONCLUIR QUE EXISTE CONTROVERSIA EN LA FRECUENCIA DEL USO NO AUTORIZADO DE LA IMAGEN DE SIFRE ORTEGA**

**ERRÓ EL TPI AL CONCLUIR QUE DEBE CONSIDERAR LA INVERSIÓN Y LOS GASTOS INCURRIDOS POR LAS DEMANDADAS PARA DETERMINAR LA CUANTÍA DE LOS DAÑOS ESTATUTARIOS A FAVOR DE LA PARTE DEMANDANTE**

**ERRÓ EL TPI DETERMINAR COMO UN ASUNTO EN CONTROVERSIA EL CONTENIDO Y EL TIEMPO DE**

---

[19] Íd., pág. 2.

**PARTICIPACIÓN DE SIFRE ORTEGA EN CADA CURSO**

De otro lado, el 26 de abril de 2026, los recurridos presentaron su *Oposición a Recurso de Certiorari.*

## II.

### A.    Sentencia Parcial

El Tribunal Supremo de Puerto Rico ha señalado en reiteradas ocasiones que las normas sobre el perfeccionamiento de los recursos apelativos deben ser observadas rigurosamente.[20] En el caso particular de la *Apelación*, la Regla 52.2 (a) de Procedimiento Civil establece que:

> *(a) Recursos de apelación. Los recursos de apelación al Tribunal de Apelaciones o al Tribunal Supremo para revisar sentencias deberán presentarse dentro del **término jurisdiccional** de treinta (30) días contados desde el archivo en autos de copia de la notificación de la sentencia dictada por el tribunal apelado.*[21]

No obstante, el mencionado término admite interrupción ya que la aludida Regla 52.2, en su inciso (e), [22] dispone que el término para apelar se interrumpirá por la presentación oportuna de una moción de reconsideración, sujeto a lo dispuesto en la Regla 47 de Procedimiento Civil, *infra*.

La Regla 52.2(a) de Procedimiento Civil,[23] dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[24] Como corolario de lo

---

[20] *García Ramis v. Serrallés*, 171 DPR 250, 253 (2007).
[21] Regla 52.2 (a) de las Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V, R. 52.2 (a); además, véase la Regla 13 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 13. Énfasis nuestro.
[22] 32 LPRA Ap. V, R. 52.2 (e).
[23] 32 LPRA Ap. V, R. 52.2 (a).
[24] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).

anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.
>
> En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios y funcionarias, o una de sus instrumentalidades que no fuere una corporación pública, o en que los Municipios de Puerto Rico o sus funcionarios y funcionarias sean parte en un pleito, el recurso de apelación se formalizará, por cualquier parte en el pleito que haya sido perjudicada por la sentencia, presentando un escrito de apelación dentro del término jurisdiccional de sesenta días, contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado.[25]

No obstante, el término de treinta (30) días para acudir en alzada puede quedar interrumpido mediante la presentación oportuna de una moción de reconsideración fundamentada.[26] En tal caso, el curso del término para apelar comienza a partir del archivo en autos copia de la notificación de la resolución que resuelve la moción.[27] Esto, a pesar de que se haya declarado la moción No Ha Lugar.

También recordamos la norma de Derecho Apelativo que limita nuestra intervención con las decisiones discrecionales de un tribunal sentenciador, salvo que las decisiones emitidas por este último sean arbitrarias o medie error manifiesto, pasión, prejuicio o parcialidad, entiéndase, abuso de discreción. *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR 843, 865 (2008).

La Regla 42. 1 de Procedimiento Civil, 32 LPRA Ap. V, dispone que una sentencia "incluye cualquier determinación del

---

[25] 4 LPRA Ap. XXII-B, R. 13 (A).
[26] 32 LPRA Ap. V, R. 47.
[27] *Id*.

Tribunal de Primera Instancia que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse".

Ahora, en casos donde **no se dicte sentencia sobre la totalidad del pleito**, la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, dispone lo siguiente:

> Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la misma, y es necesario celebrar juicio, **será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia**, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. A base de las determinaciones realizadas en virtud de esta regla el tribunal dictará los correspondientes remedios, si alguno. (Énfasis nuestro).

De lo anterior se desprende que dicho mecanismo le permite al tribunal dictar sentencia sumaria de naturaleza interlocutoria resolviendo cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. *Szendrey-Ramos v. Consejo de Titulares*, 184 DPR 133, 166 (2011). Por tanto, se podrá dictar sentencia sumaria parcial de cualquier controversia, siempre que ella pueda ser separada de las demás controversias envueltas en el pleito. *Íd*. Para ello, el tribunal deberá determinar los hechos sobre los cuales no existe controversia y distinguir los mismos de los hechos controvertidos y sobre los cuales es

necesario celebrar juicio. Regla 36.4 de Procedimiento Civil, *supra.*

Del anterior precepto se desprende que la obligación de consignar determinaciones de hechos controvertidos y los no controvertidos al dictar una sentencia sumaria surge cuando se dicta en parte (sentencia sumaria parcial) o se deniega.

Cuando en una Sentencia se indique la siguiente expresión:

"Como no existe razón para posponer que se dicte esta Sentencia Parcial hasta la resolución final del pleito, se ordena a la señora secretaria del Tribunal expresamente a que registre la misma."

Procede considerarse Sentencia Parcial y para recurrir contra esta contra esta se debe seguir el trámite de Apelación.

### B. Certiorari

El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023); Rivera et al. v. Arcos Dorado et al., 212 DPR 194, 207 (2023); Torres González v. Zaragoza Meléndez, 211 DPR 821, 846-847 (2023); Caribbean Orthopedics v. Medshape et al., 207 DPR 994, 1004 (2021); 800 Ponce de León v. AIG, 205 DPR 163, 174-175 (2020); IG Builders *et al*. v. BBVAPR, 185 DPR 307, 337-338 (2012). Contrario al recurso de apelación, la expedición o no del auto de *certiorari* solicitado descansa en la sana discreción del Foro Apelativo. Torres González v. Zaragoza Meléndez, *supra,* pág. 847; Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723, 729 (2016).

En lo que nos atañe, la Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, nos faculta por excepción, a revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de

Primera Instancia cuando se recurra de decisiones sobre casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Ahora bien, con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso de *certiorari*, nuestros oficios se encuentran enmarcados en la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR ___ (2025), 4 LPRA Ap. XXII-B. La referida regla señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. Torres Martínez v. Torres Ghigliotty, 175 DPR 83, 97 (2008). Esta dispone lo siguiente:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Es norma reiterada que los jueces de instancia tienen gran flexibilidad y discreción para lidiar con el manejo diario y tramitación de los asuntos judiciales. BPPR v. SLG Gómez-

López, *supra*, págs. 333-334. La deferencia al juicio y a la discreción del foro primario está fundamentada en el principio de que los foros apelativos no pueden pretender conducir ni manejar el trámite ordinario de los casos que se ventilan ante el Tribunal de Primera Instancia. Como es harto sabido, dicho foro es el que mejor conoce las particularidades del caso y quien está en mejor posición para tomar las medidas necesarias que permitan cimentar el curso a trazar y así llegar eventualmente a una disposición final. BPPR v. SLG Gómez-López, *supra*, pág. 334, citando a Mejías v. Carrasquillo, 185 DPR 288, 306-307 (2012).

Así pues, como regla general, los foros apelativos no intervendrán en la discreción de los foros primarios a no ser que las decisiones emitidas resulten arbitrarias o en un abuso de su discreción. BPPR v. SLG Gómez-López, *supra*, pág. 334. El adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. BPPR v. SLG Gómez-López, *supra*, pág. 335; SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 434-435 (2013); Rivera Durán v. Banco Popular, 152 DPR 140, 155 (2000).

Ahora bien, la discreción cede en las circunstancias en las que se configura un craso abuso de esta o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitaría un perjuicio sustancial a la parte afectada por su determinación. BPPR v. SLG Gómez-López, *supra*; Rivera et al. v. Arcos Dorados et al., *supra*. Por ende, si no se encuentra presente en la petición ante nuestra consideración ninguno de los criterios antes transcritos y la actuación del foro primario "no está desprovista de base

razonable ni perjudica derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del juez de instancia a quien corresponde la dirección del proceso". Sierra v. Tribunal Superior, 81 DPR 554, 572 (1959).

### C. Prescripción

Sabido es que la prescripción es una figura que extingue un derecho, debido a que una parte no lo ejerce en un período de tiempo determinado por ley. Art. 1189 del Código Civil, 31 LPRA sec. 9481; Rivera Ruiz et al. v. Mun. de Ponce et al., 196 DPR 410 (2016). Los plazos de prescripción comienzan a transcurrir cuando el promovente de una acción conoce o debió conocer la existencia del derecho a reclamar y la identidad de la persona contra quien puede actuar. Art. 1190 del Código Civil, 31 LPRA sec. 9482.

En nuestro ordenamiento jurídico se reconocen tres (3) mecanismos que interrumpen los términos prescriptivos dispuestos en ley, a saber: 1) el ejercicio de la acción ante los tribunales; 2) la reclamación extrajudicial; y 3) cualquier acto de reconocimiento de la obligación por parte del deudor. Art. 1197 del Código Civil, 31 LPRA sec. 9489. Véase, Nevárez Agosto v. United Surety et. al., *supra;* Rivera Ruiz et al. v. Mun. De Ponce et al., *supra*, pág. 415.

En las acciones de daños extracontractuales el promovente de una acción debe interrumpir individualmente el término prescriptivo respecto a cada uno de los cocausantes solidarios, sino se enfrenta a que transcurra la prescripción respecto a ese alegado autor que no fue traído al pleito o que su término nunca fue interrumpido. Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 DPR 365, 381 (2012). Esto, ya que la oportuna interposición de una demanda contra uno de los cocausantes de un daño

extracontractual no interrumpe el término contra el resto de los alegados autores. Íd.

### D. Ley General de Corporaciones

Las leyes corporativas son un instrumento que utilizan los gobiernos para estimular el desarrollo empresarial y económico. Exposición de Motivos de la Ley General de Corporaciones, Ley Núm. 164-2009, 14 LPRA sec. 3501 *et seq.*; Santiago et al. v. Rodríguez et al., 181 DPR 204, 214 (2011). La figura de la corporación facilita el desarrollo de empresas porque se le reconoce una personalidad jurídica distinta a la de sus dueños o miembros, quienes por lo general no responderán con sus bienes personales por los actos de la corporación, sino hasta el monto de su inversión. Santiago et al. v. Rodríguez et al*., supra,* pág. 214.

En nuestro ordenamiento jurídico, la corporación tiene su propia personalidad jurídica, distintos a la personalidad y al patrimonio de sus accionistas. DACO v. Alturas de Fl. Dev. Corp. y otro, 132 DPR 905, 924 (1993); Sucn. Santaella v. Srio. de Hacienda, 96 DPR 442, 451 (1968). Así pues, la responsabilidad de los accionistas sobre las obligaciones de la corporación está limitada al capital que éstos hayan aportado al patrimonio de la corporación. DACO v. Alturas de Fl. Dev. Corp. y otro, *supra,* pág. 925.

Ahora bien, no se sostendrá la ficción jurídica de una corporación si ello equivale a sancionar un fraude, promover una injusticia, evadir una obligación estatutaria, derrotar la política pública, justificar la inequidad, proteger el fraude o defender el crimen. Srio. D.A.C.O. v. Comunidad San José, Inc., 130 DPR 782, 798 (1992); Cruz v. Ramírez, 75 DPR 947, 954 (1954). Los tribunales descartarán la personalidad jurídica de una corporación y sujetarán el patrimonio de los accionistas para responder por las

deudas y obligaciones de la corporación en aquellos casos en los cuales la corporación es meramente un "alter ego" o conducto económico pasivo de sus únicos accionistas. DACO v. Alturas de Fl. Dev. Corp. y otro, 132 DPR 905, 925 (1993); Cruz v. Ramírez, *supra*.

La aplicación de este principio dependerá de los hechos y las circunstancias específicas del caso particular a la luz de la prueba presentada. DACO v. Alturas de Fl. Dev. Corp. y otro, *supra*, 925. El peso de la prueba descansa en la parte que propone la imposición de responsabilidad individual a los accionistas y corresponde al foro primario determinar, luego de apreciar la prueba, si procede el levantamiento del velo corporativo. DACO v. Alturas de Fl. Dev. Corp. y otro, *supra*, pág. 926.

En esa línea, el Artículo 4.03 de la Ley General de Corporaciones establece en cuanto la obligación de directores y oficiales en el desempeño de sus funciones, que esta solo conllevará responsabilidad ante negligencia crasa. 14 LPRA sec. 3563. En específico, el precipitado artículo dispone lo siguiente:

> Los directores y oficiales estarán obligados a dedicar a los asuntos de la corporación y al desempeño de sus funciones, la atención y el cuidado que en una posición similar y ante circunstancias análogas desempeñaría un director u oficial responsable y competente al ejercer de buena fe su juicio comercial o su mejor juicio en el caso de las corporaciones sin fines de lucro. Sólo la negligencia crasa en el desempeño de las obligaciones y deberes antes reseñados conllevará responsabilidad. Artículo 4.03 de la Ley Núm. 164-2009, 14 LPRA sec. 3563.

### E. Ley del Derecho sobre la Propia Imagen

Es sabido que la Carta de Derechos de nuestra Constitución consagra una protección expresa al derecho de la intimidad y la dignidad de las personas. Art. II, Secs. 1 y 8, Const. de PR, LPRA, Tomo 1. En esa línea, se trata de un derecho fundamental y de alta envergadura que opera por su propia fuerza y se puede hacer

valer entre personas privadas. <u>Friger Salguerio v. Mech-Tech College, LLC,</u> 2026 TSPR 30, 217 DPR __, 5 (2026); <u>Vigoreaux Lorenzana v. Quizno's,</u> 173 DPR 254, 262 (2008); <u>López Tristani v. Maldonado,</u> 168 DPR 838, 850 (2006).

A esos efectos, el derecho reconocido como el de la propia imagen está estrechamente relacionado con la intimidad y su honor. <u>Friger Salguerio v. Mech-Tech College, LLC,</u> *supra,* pág. 6; <u>López Tristani v. Maldonado,</u> *supra*, pág. 851. Este derecho otorga a su titular de excluir a un tercero que reproduzca o publique su propia imagen sin su consentimiento. <u>Friger Salguerio v. Mech-Tech College, LLC,</u> *supra,* pág. 6; <u>Vigoreaux Lorenzana v. Quizno's,</u> *supra*, pág. 266. Ahora bien, la ley dispone que el derecho sobre la propia imagen es transmisible "a través de una transferencia escrita, incluyendo, pero no limitándose a un contrato firmado entre las partes, poderes, licencias, donaciones y testamentos, o mediante sucesión intestada". Art. 5 de la Ley Núm. 139-2011, 32 LPRA sec. 3154.

Según hemos mencionado, la Ley del Derecho sobre la Propia Imagen se creó a los fines de reconocer y proteger ese derecho de envergadura constitucional. Esta dispone que será una violación a la ley cuando cualquier persona natural o jurídica utilice la imagen de otra persona con fines o propósitos comerciales o publicitarios sin su consentimiento. Véase, Art. 3 de la Ley Núm. 139-2011, 32 LPRA sec. 3152. Quien incumpla con el aludido estatuto responderá por los daños causados. Íd. En cuanto a los remedios disponibles, el Artículo 4 de la Ley Núm. 139-2011, 32 LPRA sec. 3153, dispone sobre el resarcimiento de daños, que:

> El tribunal, en su discreción, podrá fijar la cuantía de los daños en una cantidad que no exceda tres (3) veces la ganancia del demandado y/o la pérdida del demandante

cuando determine que la violación fue intencional o de mala fe.

En la alternativa, el demandante podrá optar por solicitarle al tribunal, daños estatutarios. Los daños estatutarios podrán fijarse en una cuantía no menor de $750 ni mayor de $20,000 por violación, según el tribunal lo considere justo. En un caso en el cual el tribunal determine que la violación fue intencional o debido a una negligencia crasa, el tribunal, en su discreción, podrá aumentar la cuantía de daños estatutarios a una suma no mayor de $100,000 por violación. Cada violación bajo estos daños estatutarios será equivalente al acto de la utilización ilegal de la imagen del reclamante en un trabajo, independiente del número de copias que se hagan del trabajo en cuestión en un momento dado. En un caso en el cual el tribunal determine que la violación fue intencional o debido a una negligencia crasa, el tribunal, en su discreción, podrá aumentar la cuantía de daños estatutarios a una suma no mayor de $100,000 por violación.

. . . . . . . .

Asimismo, si el caso se resuelve a favor del titular del derecho, el TPI siempre fijará la cuantía de las costas, honorarios y gastos del pleito a favor de este. Íd.

Conviene mencionar que, este estatuto limita la inmunidad de los dueños o empleados de cualquier medio, incluyendo, pero sin limitarse a, "periódicos, revistas, vallas publicitarias, internet y estaciones de radio o televisión, en el que aparezca la imagen de una persona en violación de esta Ley". Art. 10 de la Ley Núm. 139-2011, 32 LPRA sec. 3158. Ahora bien, como excepción a tal norma no será responsable aquel que demuestre que no tenía conocimiento de que el uso de esa imagen se hizo sin la autorización requerida por la misma Ley Núm. 139-2011. Íd.

Además, toda acción bajo la Ley Núm. 139-2011 deberá iniciarse no más tarde de un (1) año a partir de la fecha en que la persona afectada adquirió o debió haber adquirido conocimiento del surgimiento de los hechos que dan pie a la causa de acción. Art. 7 de la Ley Núm. 139-2011, 32 LPRA sec. 3156.

Recientemente, nuestro Tribunal Supremo en <u>Friger Salguerio v. Mech-Tech College, LLC,</u> *supra,* aclaró que los

derechos sobre la imagen en nuestro ordenamiento y el alcance de la Ley Núm. 139-2011. En primer lugar, nuestro más alto foro local afirmó que como tribunal estatal posee jurisdicción para examinar posibles violaciones a los derechos sobre la propia imagen. Friger Salguerio v. Mech-Tech College, LLC, *supra,* pág. 10. Asimismo, sostuvo que, el uso de la imagen para propósitos comerciales requiere el consentimiento del titular. Íd., pág. 13. El mismo foro hizo énfasis en que "los derechos sobre la propia imagen son transmisibles únicamente a través de un acuerdo escrito sin importar la relación laboral, contractual, o de otra naturaleza habida entre las partes, o mediante sucesión intestada". Íd. (Énfasis suprimido).

Además, el Tribunal Supremo explicó, en cuanto a los hechos particulares del caso que, el demandante no logró probar la cantidad de usos no autorizados de material audiovisual. Íd., pág. 13. No obstante, confirmó el razonamiento del foro primario en cuanto a que al probarse que se usó la imagen del demandante al menos una ocasión, luego de que este solicitara el cese y desista de uso, se cometió la infracción. Íd. Asimismo, dispuso que el TPI no se extralimitó sobre la imposición de veinte mil dólares ($20,000) —suma máxima por una violación—, sino que impuso una suma permitida en ley. Íd.

### III.

Como primer planteamiento de error, el peticionario alega que erró el TPI al desestimar la *Demanda* a favor de Aldarondo Jiménez por su desconocimiento de las exigencias de la Ley Núm. 139-2011. Como segundo error, sostiene que el foro primario incidió al concluir que existe controversia en la frecuencia del uso no autorizado de la imagen del señor Sifre Ortega. En cuanto al tercer error, alega que el TPI incidió al concluir que debe

considerar la inversión y los gastos incurridos por las demandadas para determinar la cuantía de los daños estatutarios a favor de la parte demandante. Como último error, el peticionario plantea que contrario a lo que el foro primario resolvió, no existe controversia del contenido y el tiempo de participación de este en cada curso.

En cuanto al primer señalamiento de error, resolvemos que no le asiste la razón al peticionario. Veamos.

El señor Aldarondo Jiménez solicitó la desestimación de la reclamación en su contra por dos fundamentos: prescripción e inmunidad corporativa. No obstante, el TPI no resolvió la defensa de prescripción, dado a que, el "Tribunal de Apelaciones atendió el argumento de la prescripción y determinó que la causa de acción no estaba prescrita".[28] No obstante, el foro primario confunde lo resuelto en el caso número KLAN202400569 con la prescripción de PRML y PRLME sobre la del señor Aldarondo Jiménez.

De una lectura de ese caso, un panel hermano resolvió, entre otras cosas, la prescripción de PRML y PRLME. No obstante, el señor Aldarondo Jiménez aún no había sido traído al pleito. Según explicamos, en Fraguada Bonilla v. Hosp. Aux. Mutuo, *supra,* pág. 381, se estableció que, en las acciones de daños extracontractuales, el damnificado debe interrumpir individualmente el término prescriptivo respecto a cada cocausante solidario. Es decir, la oportuna interposición de una demanda contra un cocausante solidario de un daño extracontractual no interrumpe el término contra el resto de los alegados autores. Aclarado ese asunto, veamos si el peticionario presentó la acción en contra del señor Aldarondo Jiménez en el

---

[28] Entrada #107 de SUMAC TPI, pág.15.

término de un (1) año que contempla la ley. Véase, Art. 7 de la Ley Núm. 139-2011, 32 LPRA sec. 3156.

Surge del expediente que, el 12 de diciembre de 2023, el peticionario advino en conocimiento que las entidades codemandadas continuaban haciendo uso de su imagen e identidad en los referidos cursos. En la *Segunda Demanda Enmendada*, se incluye por primera vez al señor Aldarondo Jiménez y a su esposa, la cual fue presentada el 5 de diciembre de 2024. Esta se hizo mediante renuncia de emplazamiento contestado el 20 de enero de 2025.[29] El 15 de diciembre de 2023, el peticionario presentó una carta sobre una reclamación del "cese y desista" en contra de los recurridos. El 9 de enero de 2024, el señor Aldarondo Jiménez contestó dicha carta e informó que no sería hasta finales de mes de febrero de 2024 que tendrían los nuevos cursos sin la imagen de Sifre Ortega. [30]

En esa contestación, el señor Aldarondo Jiménez le explicó al peticionario que "[t]oda la información aquí brindada le fue comunicada vía correo electrónico al Sr. Sifre el 17 de mayo del 2023 luego de su correo electrónico del 9 de mayo del 2023 donde reclamó por primera vez que removiéramos su participación en los cursos grabados".[31] Por tanto, somos de la opinión, que el término no se encuentra prescrito, toda vez que aún para el 9 de enero de 2024 la reclamación se encontraba viva. Esto, dado a que, el señor Aldarondo Jiménez y el peticionario se encontraban en conversación sobre el cese de uso los videos en controversia. Así como de todas las comunicaciones que continuaron interrumpiendo el término, la cuales surgen de la misma carta del

---

[29] Entrada #61 de SUMAC TPI.
[30] Entrada #50, Anejo 3 de SUMAC TPI.
[31] Íd.

señor Aldarondo Jiménez. Así pues, aún con el fundamento equivocado, no incidió el foro primario al resolver que la acción en contra del señor Aldarondo Jiménez no se encontraba prescrita.

Ahora bien, en cuanto al planteamiento de la inmunidad corporativa, resolvemos que procede mantener esa inmunidad al señor Aldarondo Jiménez. Según reseñamos, el Artículo 10 de la Ley Núm. 139-2011, 32 LPRA sec. 3158, limita la inmunidad de los dueños o empleados de cualquier medio en el que aparezca la imagen de una persona. Como excepción a tal norma, no será responsable aquel que demuestre que no tenía conocimiento de que el uso de esa imagen se hizo sin la autorización requerida por la misma Ley Núm. 139-2011. Íd.

Cónsono con ese estatuto, el Art. 4.03 de la Ley General de Corporaciones, establece, en cuanto a la obligación de directores y oficiales en el desempeño de sus funciones, que solo la negligencia crasa conllevará a la responsabilidad. 14 LPRA sec. 3563. La misma Ley Núm. 39-2011 define la negligencia crasa como "la ausencia total de cuidado o el ejercicio de un grado tan pequeño de cuidado, que origina una presunción de indiferencia hacia las consecuencias, implicando una total despreocupación". Art. 2(d) de la Ley Núm. 39-2011, 32 LPRA sec. 3151.

De todo lo anterior, coincidimos con el foro primario que el hecho de que el señor Aldarondo Jiménez se comprometiera a eliminar la imagen de Sifre Ortega en más de una ocasión, demuestra que no hubo ausencia de cuidado e indiferencia de atender el reclamo del peticionario. Más bien, el reclamo fue atendido por los recurridos de este caso. Además, confirmamos al foro primario que no se presentó prueba suficiente que demostrara la existencia de negligencia crasa ni la intención de violar un derecho. Igualmente, acogemos la defensa del señor

Aldarondo Jiménez que, sostuvo que, desconocía de las disposiciones de la Ley Núm. 139-2011, porque el señor Sifre Ortega no hizo referencia a ley alguna cuando reclamó el uso de su imagen. Por tanto, no erró el TPI al desestimar la reclamación en contra del señor Aldarondo Jiménez en su carácter personal.

Al estar estrechamente relacionados, discutiremos el resto de los errores señalados en conjunto.

En Friger Salguerio v. Mech-Tech College, LLC, *supra,* pág. 13, un caso resuelto posterior a que el foro primario dictara la sentencia recurrida, pero pertinente a la controversia ante nos. Allí, el señor Friger Salgueiro no logró probar la cantidad de usos no autorizados de material audiovisual. No obstante, el TPI dispuso que el Mech-Tech utilizó material audiovisual con la imagen del señor Friger Salgueiro en al menos una ocasión luego de que este solicitara el cese y desista de uso. Ante esto, el foro primario impuso la cantidad de veinte mil dólares ($20,000), a saber, la suma máxima por una violación. Nuestro Tribunal Supremo resolvió que el TPI no se extralimitó en su determinación, sino que impuso una suma permitida en ley ante la infracción acreditada. Esto, ya que Mech-Tech violó el derecho sobre la propia imagen del señor Friger Salgueiro en, al menos, una ocasión, por lo que este último tiene derecho a un remedio bajo la Ley Núm. 139-2011. Íd.

En el caso ante nos, el TPI determinó que subsistían las siguientes controversias: 1) la frecuencia del uso de la imagen de Sifre Ortega por parte de la demandada; 2) el contenido y tiempo de participación de Sifre Ortega en las grabaciones; y 3) la cuantía de los daños estatutarios bajo la Ley Núm. 139-2011.[32] No

---

[32] Entrada #107 de SUMAC TPI.

obstante, no existe duda que los recurridos utilizaron la imagen del peticionario al menos una vez. Inclusive, es un hecho aceptado por los mismos recurridos. Por tanto y en armonía con la decisión Friger Salguerio v. Mech-Tech College, LLC, *supra,* resolvemos que la frecuencia del uso de la imagen, el contenido y tiempo de participación del señor Sifre Ortega en las grabaciones, son asuntos que no están en controversia, ya que se demostró que al menos una vez se utilizó, en contravención de la Ley Núm. 139-2011. Por tanto, incidió el foro primario al resolver que existía controversia sobre esos asuntos.

Ahora bien, lo que resta es determinar la cuantía de los daños estatutarios bajo la Ley Núm. 139-2011. Así pues, se devuelve el caso al foro primario con el fin de que establezca la cuantía de daños a favor del peticionario.

## IV.

Por los fundamentos expresados, se expide el recurso de *Certiorari,* se modifica en parte y se confirma el restante de la *Sentencia Parcial* y *Orden* recurrida. Se devuelve el caso al TPI para la continuación de los procedimientos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.  La Juez Grana Martínez concurre sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones